IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF ROBERT WAYNE LEWIS, et al., | HONORABLE JEROME B. SIMANDLE |
| Plaintiffs, | Civil Action No. 16-3503 (JBS-AMD) |
| v. | |
| CUMBERLAND COUNTY, CFG HEALTH SYSTEMS, LLC, et al., | **OPINION** |
| Defendants. | |

APPEARANCES:

Conrad J. Benedetto, Esq.
Danielle Marie Key, Esq.
John E. Kusturiss, Jr., Esq.
Kimmo Z. Hussain Abbasi, Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1814 East Route 70, Suite 350
Cherry Hill, NJ 08003
-and-
Melissa Yvette Hoffman, Esq.
LAW OFFICES OF CONRAD J. BENEDETTO
1405 Chews Landing Road, Suite 21
Laurel Springs, NJ 08021
     Attorneys for the Plaintiffs

Daniel Edward Rybeck, Esq.
WEIR & PARTNERS, LLP
215 Fries Mill Road, Second Floor
Turnersville, NJ 08012
-and-
Stephen D. Holtzman, Esq.
Jeffrey S. McClain, Esq.
HOLTZMAN & MCCLAIN, PC
524 Maple Avenue, Suite 200
Linwood, NJ 08221
     Attorneys for Defendant CFG Health Systems, LLC

**SIMANDLE, District Judge:**

This matter comes before the Court on Defendant CFG Health System, LLC's ("CFG") motion for partial summary judgment. [Docket Item 38.] On December 16, 2016, Plaintiff Tammy Willson, both as the administrator of the estate of Robert Wayne Lewis and in her own right, filed a second amended complaint ("SAC") in this Court against several defendants, alleging a variety of claims arising from the unfortunate death of Robert Wayne Lewis on October 29, 2015 in the Cumberland County Jail. [Docket Item 26.]

CFG argues that it must be granted partial summary judgment as to Plaintiff's claims of professional negligence of medical malpractice for Plaintiff's failure to timely obtain and serve an Affidavit of Merit from a qualified affiant as required by N.J.S.A. 2A:53A-27 through -29. Plaintiff argues in response that no such affidavit is required in this case.

The principal issue to be determined is whether New Jersey law requires an affidavit of merit to be filed in the instant case as a prerequisite to successful maintenance of the claims based on malpractice or professional negligence.

For the reasons discussed below, the Court finds that such an affidavit was not required for the claims against CFG to a certain extent. Accordingly, the Court will grant in part the

relief requested by CFG and grant summary judgment to it with regard to Plaintiff's claims grounded in professional negligence premised on an alleged failure to act "properly."

## I. FACTUAL AND PROCEDURAL BACKGROUND

The instant action arises out of the death of Robert Lewis on October 30, 2015, after he apparently hanged himself in the Cumberland County Jail on October 29. His mother, Ms. Willson, as administrator of Mr. Lewis's estate and in her own right, is the named plaintiff in this action.

Mr. Lewis "was incarcerated at the Vineland Police Department on October 26, 2015" and "was discovered 'hanging' in the shower at the Cumberland County Jail by fellow inmates" on October 29, 2015. [SAC ¶¶ 15, 18.]

Plaintiff claims that, upon "information and belief, upon the booking of Robert Wayne Lewis into the Cumberland County Jail," defendant John Doe corrections officers "and representatives and/or employees of CFG[] were required to screen Mr. Lewis not only for any physical problems, but also to determine in [sic] Mr. Lewis presented a risk for any psychological problems, including suicide." [SAC ¶ 16.] She continues: "Upon information and belief, Defendants[] John Doe Corrections Officers 1 - 10, and representatives and/or

employees of Defendant CFG, failed to properly screen Robert Wayne Lewis for any suicidal tendencies, or any other psychological problems, and also failed to monitor Robert Wayne Lewis, even though they were aware of prior attempts to commit suicide by Mr. Lewis. In doing so, these defendants breached their legal duty to maintain a safe and suitable environment, and failed to keep Robert Wayne Lewis safe from injury, harm and death, thus causing Mr. Lewis's death." Id. ¶ 19.

Plaintiff claims that the "above-described acts and omissions by Defendants, John Doe Corrections Officers 1-10, and representatives and/or employees of CFG, demonstrated a deliberate indifference to and a conscious disregard for the psychological needs, prior suicidal history and the overall safety of Robert Wayne Lewis, of which they were aware, or should have been aware." Id. ¶ 21.

Plaintiff asserts four claims for relief against CFG: the fourth claim for relief, a violation of the New Jersey Civil Rights Act, N.J.S.A. 10:6-1 et seq. [SAC ¶¶ 41-44][1]; the fifth claim for relief, wrongful death [SAC ¶¶ 45-50]; the sixth claim

---

[1] While the SAC designates CFG as a defendant to this claim in the relevant subheading, the paragraphs containing the substance of this claim mention only other specific defendants' conduct or omissions. Id. See Docket Item 27, CFG's Answer, ¶¶ 42-44 ("This Defendant neither admits nor denies the allegations of this paragraph and leaves the Plaintiff's [sic] to their proofs since it is not directed against this Defendant").

for relief, survival action [SAC ¶¶ 51-56]; and the seventh claim for relief, negligence [SAC ¶¶ 57-60][2].

As Plaintiff states with regard to the wrongful death, survival, and negligence claims: "Defendants owed a duty of reasonable care to Plaintiff's decedent, and to other inmates at the Cumberland County Jail, to properly screen inmates for suicidal tendencies or other psychological problems, to adequately monitor inmates, and to protect inmates from injury, harm or death at the Jail. . . . Defendants failed to use the requisite standard of care, subjecting the de[cede]nt, Robert Wayne Lewis, to the violation of his constitutional right to be free from cruel and unusual punishment under the Eighth and Fourteenth Amendments. . . . The Defendants['] deliberate indifference to Robert Wayne Lewis's rights caused the death of Robert Wayne Lewis." [SAC ¶¶ 46-48.] She continues: "Defendants owed the decedent, Robert Wayne Lewis, a duty to use reasonable care in carrying out the lawful duties associated with, and required by the County jail or detention center. . . .

---

[2] Again, while the SAC designates CFG as a defendant to this claim in the relevant subheading, the paragraphs containing the substance of this claim describe only conduct and omissions of "Cumberland County and its Corrections Division[.]" [SAC ¶¶ 58-59.] See CFG's Answer ¶¶ 58-59 ("This Defendant neither admits nor denies the allegations of this paragraph and leaves the Plaintiff's [sic] to their proofs since it is not directed against this Defendant").

Defendants breached their duties when they failed to use reasonable care, were negligent, reckless, and grossly negligent, and directly and proximately caused the death of the de[cede]nt Robert Wayne Lewis on October 29, 2015." [SAC ¶¶ 52-53.]

CFG filed an Answer to the SAC on December 29, 2016. [Docket Item 27.] The Answer includes separate defenses for failure to state a claim and failure to file an appropriate Affidavit of Merit ("AOM") pursuant to N.J.S.A. 2A:53A-26, et seq. "and applicable case law[.]" [Docket Item 27 at 6, 7.]

Plaintiff did not obtain or serve an AOM on CFG on or before February 27, 2017, or before April 28, 2017. [Docket Items 39 at 5, ¶¶ 12-15; 38-2 at ¶¶ 12-15.]

## II.  STANDARD OF REVIEW[3]

At summary judgment, the moving party bears the initial burden of demonstrating that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); accord Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once a properly supported motion for summary judgment is made, the burden shifts to the

---

[3] The Court exercises jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 & 1343(3) and pendent jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.

non-moving party, who must set forth specific facts showing that there is a genuine issue for trial. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250 (1986). In reviewing a motion for summary judgment, the court is required to examine the evidence in light most favorable to the non-moving party, and resolve all reasonable inferences in that party's favor. <u>Hunt v. Cromartie</u>, 526 U.S. 541, 552 (1999); <u>Wishkin v. Potter</u>, 476 F.3d 180, 184 (3d Cir. 2007). Credibility determinations are not appropriate for the court to make at the summary judgment stage. <u>Davis v. Portlines Transportes Maritime Internacional</u>, 16 F.3d 532, 536 n.3 (3d Cir. 1994).

Under <u>Nuveen Mun. Trust v. WithumSmith Brown, P.C.</u>, 692 F.3d 283, 303 n.13 (3d Cir. 2012), a failure to file a timely AOM is properly the subject of "a motion for summary judgment under Rule 56"; although "the AOM Statute directs courts to dismiss actions in which a timely affidavit has not been filed for 'failure to state claim,' because the affidavit is not a pleading requirement, this language merely provides that the consequences of not filing a timely affidavit are the same as failing to state a claim[,]" especially because the court must necessarily consider "matters outside the pleadings" when considering the applicability of the AOM statute and timely filing of the AOM.

## III. ANALYSIS

CFG argues that N.J.S.A. 2A:53A-26 through -29 ("the AOM Statute" or "the Statute") applies to Plaintiff's claims of professional negligence and malpractice (and the associated wrongful death and survival claims) against it. [Docket Item 38-6 at 11-14.][4]

Plaintiff argues, in response, four distinct points: 1) the alleged failure to file an AOM should not be used to dismiss Plaintiff's constitutional claims [Docket Item 39-5 at 7-10]; 2) CFG has not demonstrated that it is a "licensed person" within the meaning of N.J.S.A. 2A:53A-27 such that it may invoke the protections of the AOM Statute [Docket Item 39-5 at 11-15]; 3) Plaintiff was not required to file an AOM because her state law claims against CFG are subject to the common knowledge exception [id. at 15-21]; and 4) should the Court disagree, the state law claims should be dismissed without prejudice due to the existence of extraordinary circumstances [id. at 21-26].

In reply, CFG makes the following arguments: 1) the fifth, sixth, and seventh claims for relief towards which it directs

_____

[4] Defendant does not argue that the AOM Statute requires summary judgment granted in its favor on the fourth claim for relief under the New Jersey Civil Rights Act.

the instant motion[5] are not constitutional claims but rather
"pendent state law claims based on the breach of a standard of
care/professional negligence" [Docket Item 44 at 5-6]; 2) CFG is
entitled to an AOM for Plaintiff's "pendent state law claims
based in professional negligence and . . . for vicarious
liability of [CFG] for the alleged professional negligence of
its employees" where those claims "are based wholly in the
alleged failure to properly screen for suicidal tendencies, to
monitor and protect Robert Wayne Lewis" [id. at 6-12]; 3) the
Common Knowledge Exception is inapplicable to Plaintiff's claims
[id. at 12-17]; and 4) no exceptional circumstances exist to
support a dismissal without prejudice [id. at 17-26]. Finally,
CFG argues that the AOM signed by Dr. Lawrence J. Guzzardi that
Plaintiff did ultimately file on June 19, 2017 (136 days after
the filing of CFG's answer to the SAC) is inadequate because the
affiant is inappropriate. [Id. at 26-29.]

The Court will address these arguments.

The AOM statute provides:

In any action for damages for personal injuries [or]
wrongful death . . . resulting from an alleged act of
malpractice or negligence by a licensed person in his

---

[5] CFG contests whether Plaintiff has brought the fourth claim for
relief under the New Jersey Civil Rights Act against CFG where
CFG is listed in the heading of that claim but its conduct or
omissions are not described in the related paragraphs. [Docket
Item 44 at 6.] The Court need not decide that issue at the
present time.

> profession or occupation, the plaintiff shall, within
> 60 days following the date of filing of the answer to
> the complaint by the defendant provide each defendant
> with an affidavit of an appropriate licensed person
> that there exists a reasonable probability that the
> care, skill or knowledge exercised in the treatment,
> practice or work that is the subject of the complaint,
> fell outside acceptable professional or occupational
> standards or treatment practices. The court may grant
> no more than one additional period, not to exceed 60
> days, to file the affidavit pursuant to this section,
> upon a finding of good cause.

N.J.S.A. 2A:53A-27. New Jersey courts have held that the

"additional period" that may be applied for by a plaintiff to

extend the time period for filing the AOM renders a 120-day

deadline from the filing of the relevant answer (the original 60

day period, plus an additional sought-and-granted-for-good-cause

period not exceeding 60 days) an "end of the line . . . drop-

dead date," Douglass v. Obade, 359 N.J. Super. 159, 160 (App.

Div. 2003), or, in other words, "an outer time limit . . .

beyond which no extension could be granted," Familia v. Univ.

Hosp., 350 N.J. Super. 563, 569 (App. Div. 2002).

The Third Circuit has required the filing of an AOM in

appropriate cases within 120 days of the filing of the relevant

answer, Lee v. Thompson, 163 F. App'x 142, 144 (3d Cir. 2006)

(internal citations omitted), and has ruled that "the

consequences of a failure to file [an AOM] shall be the same as

those of a failure to state a claim[,]" Chamberlain v. Giampapa,

210 F.3d 154, 160 (3d Cir. 2000) (internal citations omitted).

As Judge Rodriguez of this court recently stated:

> "The penalty for not following the [Affidavit of Merit] Statute is severe. Absent a showing of one of four limited exceptions, the failure to file the affidavit 'shall be deemed a failure to state a cause of action.'" <u>Nuveen</u>, at 290–91 (quoting N.J. Stat. Ann. § 2A:53A–29). The four limited exceptions are: (i) where the defendant has failed to provide the plaintiff requested medical information, N.J. Stat. Ann. § 2A:53A-28; (ii) a narrow class of cases where professional negligence can be demonstrated as a matter of "common knowledge," <u>Hubbard v. Reed</u>, 774 A.2d 495, 501 (N.J. 2001) (finding that layperson could find professional negligence absent affidavit of merit where dentist pulled the wrong tooth); (iii) where the plaintiff has substantially complied with the affidavit-of-merit requirement, <u>Cornblatt v. Barow</u>, 708 A.2d 401, 411-12 (N.J. 1998); or (iv) where the plaintiff can show "extraordinary circumstances" that warrant equitable relief, <u>Ferreira v. Rancocas Orthopedic Assocs.</u>, 836 A.2d 779, 782-83 (N.J. 2003). <u>See also</u> <u>Nuveen</u>, 692 F.3d at 291 n.3.

<u>Estate of Watson v. Cumberland County</u>, No. 16-6578, 2018 WL 1064208, *2 (D.N.J. Feb. 27, 2018).


**A. AOM and Constitutional Claims; Exceptional Circumstances**

The Court need not weigh in on the merits of Plaintiff's first argument [Docket Item 39-5 at 7-10] regarding whether the AOM Statute may be used to extinguish a potentially meritorious constitutional claim; as CFG states [Docket Item 44 at 5-6], it does not direct the instant motion at any constitutional claims but rather only at the fifth, sixth, and seventh state law

claims for relief, all of which are based in professional negligence.

The Court similarly finds Plaintiff's claim that her failure to file an AOM should be excused because of the existence of "exceptional circumstances" [Docket Item 39-5 at 21-26] to be unavailing. Cases in which courts have found the requisite "exceptional circumstances" involve circumstances not present here. <u>See</u>, <u>e.g.</u>, <u>Bibby v. Corr. Med. Servs.</u>, No. 02-5561, 2006 WL 2482969, at *1 (D.N.J. Aug. 23, 2006)(defendant repeatedly failed to produce and serve documents necessary for preparation of AOM on plaintiff).

**B. Licensed Person**

Plaintiff argues that CFG is not entitled to the protections of the AOM statute because it has not satisfied its burden to produce sufficient evidence to demonstrate, at summary judgment, that it is a "licensed person" within the meaning of the statute, citing <u>Albrecht v. Corr. Med. Svcs., Inc.</u>, 422 N.J. Super. 265, 269 (App. Div. 2011), in support.

The court in <u>Albrecht</u> ruled that the defendant needed to "demonstrate that it [was] a 'licensed person' in order to invoke the protection of the statute." 422 N.J. Super. at 270. It held that the defendant could not invoke the statute as a

"licensed" "healthcare facility" because it did not demonstrate
that it was licensed by the New Jersey DHSS, such license being
a requirement of "N.J.S.A. 2A:53A-26(j), -27, and 26:2H-12." Id.
at 271. Next, the court considered whether the defendant was
"entitled to the protections of the AOM Statute as extended by
Shamrock Lacrosse[, Inc. v. Klehr, Harrison, Harvey, Branzburg &
Ellers, LLP 416 N.J. Super. 1], and Nagim [v. N.J. Transit, 369
N.J. Super. 103 (Law. Div. 2003)]." Albrecht, 422 N.J. Super. at
272. The court ultimately ruled that "when a firm's shareholders
are licensed persons under the statute, a plaintiff is required
to provide an AOM in order to pursue litigation against the firm
alone under respondeat-superior principles. The rule in these
cases is implicitly limited to professional corporations
because, by statute, professional corporations must be entirely
owned by shareholders who are themselves licensed
professionals." Id. at 273. The court stated that although "CMS
claim[ed] that it [was] 'an entity comprised of licensed
professionals,' it did not provide any evidential support for
that claim" and ruled that it was not "entitled to the limited
protections available to professional corporations." Id. at 273-
74.

As the New Jersey Supreme Court has stated, "[i]t is not
the label placed on the action that is pivotal but the nature of

the legal inquiry. Accordingly, when presented with a tort or contract claim asserted against a professional specified in the statute, rather than focusing on whether the claim is denominated as tort or contract, attorneys and courts should determine if the claim's underlying factual allegations require proof of a deviation from the professional standard of care applicable to that specific profession. If such proof is required, an affidavit of merit is required for that claim, unless some exception applies." Couri v. Gardner, 173 N.J. 328, 340 (2002).

Since Albrecht, however, more recent cases have put a slightly different gloss on the relevant analysis. The Appellate Division has stated that "an AOM from a like-licensed architect would not be necessary to support a plaintiff's claim for damages against an architect or an architecture firm whose employee or agent had acted negligently if the claim were solely based upon a theory of vicarious liability or agency. In that instance, however, the plaintiff would need to obtain an AOM from an expert with the same kind of professional license as the negligent employee or agent if he or she individually was acting within the scope of a profession listed within the categories set forth in N.J.S.A. 2A:53A-26." Hill Intern., Inc. v. Atlantic City Bd. of Ed., 438 N.J. Super. 562, 592-93 (App. Div.

2014)(citing <u>Borough of Berlin v. Remington & Vernick Engineers</u>,

337 N.J. Super. 590 (App. Div. 2001)("The Borough did not sue

the [allegedly negligent] hydrogeologist but claimed that the

[defendant firm], as his employer, was vicariously liable for

his negligence [and obtained an AOM only from a hydrogeologist

and not from a professional engineer]. . . . We reversed [the

trial court's dismissal] to the extent that the Borough's claims

were founded solely upon a theory of respondeat superior or

agency, and not upon R & V's alleged deviation from the

standards of care of the engineering profession. . . . '[W]e

direct that Berlin's liability claim be limited to whether R &

V's hydrogeologist negligently sited the well in question and

whether the hydrogeologist at the time was employed by or

working for R & V. Because no engineering affidavit has been

submitted, issues such as negligent supervision or negligent

hiring, or any other claim relating to the engineering firm's

alleged breach of its professional standard of care, may not be

pressed against R & V. Its potential liability shall be limited

to responsibility under the doctrines of respondeat superior or

agency.'")).

   The Appellate Division has also stated that "an AOM is

still required when the plaintiff's claim of vicarious liability

hinges upon allegations of deviation from professional standards

of care by licensed individuals who worked for the named defendant." McCormick v. State, 446 N.J. Super. 603, 615 (App. Div. 2016). The court in McCormick held that the "plaintiff was required to procure an AOM in this case, in which he claims that he was negligently cared for by the State prison's medical staff" but sued the state of New Jersey directly. Id. at 616. See also Mazur v. Crane's Mill Nursing Home, 441 N.J. Super. 168, 183 (App. Div. 2015)("an AOM is not necessary to support a claim against a firm whose employee or agent acted negligently if the claim against the firm is solely based on a theory of vicarious liability or agency. In such a situation, however, the plaintiff would need to serve an AOM from an expert with credentials equivalent to the employee or agent who deviated from an applicable professional standard of care," where supervisory defendant was a "healthcare facility"); James v. Cty. of Middlesex, Nos. L-5109014 and L-1114-15, 2016 WL 4474318 (App. Div. Aug. 25, 2016)("We agree with CFG and the trial court that an appropriate AOM was required to support plaintiff's cause of action against CFG, which, like the County, plaintiff seeks to hold liable for the act of its employees or agents under a theory of vicarious liability").

 To the extent that Plaintiff's claims against CFG in the SAC are premised in theories of respondeat superior or agency

based on the underlying negligence or professional malpractice

of CFG-employed "physician[s,]" "registered professional

nurse[s,]" or other "licensed persons" within the terms of

N.J.S.A. 2A:53A-26, the Court finds that New Jersey law requires

an AOM relating to that allegedly-negligent professional within

CFG's employ, unless some other exception applies.[6]


### C. Common Knowledge Exception

Next, Plaintiff argues that her failure to file an AOM

ought be excused "under the 'common knowledge' exception to the

requirements of Section 52A-27, as the 'threshold of merit' for

the wrongful death, survivorship, and negligence causes of

action here is readily apparent from the face of the Complaint."

[Docket Item 39-5 at 15, citing Hubbard v. Reed, 168 N.J. 387,

395 (2001)].] AOMs are "not required in common knowledge

cases," Hubbard v. Reed, 168 N.J. at 396, where "jurors' common

knowledge as lay persons is sufficient to enable them, using

ordinary understanding and experience, to determine a

---

[6] The Court expresses no opinion as to whether a claim against
CFG based on some other theory of negligence, e.g., failure to
train its employees, would require an AOM as it is not clear
from this record whether CFG qualifies as a professional
corporation composed of licensed professionals (see Borough of
Berlin; Richards v. Wong, No. 14-3353, 2015 WL 4742344, *4
(D.N.J. Aug. 10, 2015)), a healthcare facility (see Mazur), or
in some other respect the equivalent under New Jersey law of a
"licensed person."

defendant's negligence without the benefit of specialized knowledge or experts." Estate of Chin by Chin v. St. Barnabas Med. Ctr., 160 N.J. 454, 469 (1999). "Only in the unusual medical malpractice case will the common knowledge doctrine be invoked." Id. at 469 (internal citations omitted). It "is appropriately invoked where the carelessness of the defendant is readily apparent to anyone of average intelligence and ordinary experience." Id. (internal citations omitted).

This Court recently examined the common knowledge exception in light of an analogous fact pattern (the alleged failure to screen an inmate "properly" for suicidal ideation and risk of suicide) in Estate of Allen v. Cumberland County, 262 F. Supp. 3d 112 (D.N.J. 2017). There, the Court examined a variety of common-knowledge-exception cases, including those cited by Plaintiff here in support of her argument [Docket Item 39-5 at 16-21, discussing Natale v. Camden County Corr. Fac., 318 F.3d 575, 579-80 (3d Cir. 2003); Jackson v. Fauver, 334 F. Supp. 2d 697, 743 (D.N.J. 2004); Lopez v. Corr. Med. Servs., No. 04-2155, 2006 WL 1722584, at *4, *13-*14 (D.N.J. June 20, 2006); Mora v. U.S. Dep't of Homeland Sec. Immigration and Customs Enforcement, No. 11-3321, 2013 WL 5180041, at *1, *7 (D.N.J. Sept. 13, 2013); Bullock v. Ancora Psychiatric Hosp, No. 10-1412, 2011 WL 3651352, at *12 (D.N.J. Aug. 18, 2011); and Grimes v. Corr. Med.

<u>Servs.</u>, No. 08-567, 2010 WL 503031, at *4 (D.N.J. Feb. 8, 2010)]. <u>Estate of Allen</u>, 262 F. Supp. 3d at 116-17.

The Court ultimately concluded that "the above precedent[s] do[] not support the contention that failure to evaluate <u>properly</u> [the decedent's] psychiatric or psychological state upon her admission to Cumberland County Jail, as the Amended Complaint alleges [the treating nurse] did, is similarly analogous so as to fall under the common knowledge exception." <u>Estate of Allen</u>, 262 F. Supp. 3d at 117 (emphasis in original).

The Court distinguished <u>Chin</u> "on its facts" on the grounds that the "improper" nature of the conduct at issue "was apparent to the laypersons on the jury . . . and the nature of that impropriety was obviously and clearly connected to the harm suffered by the decedent." <u>Id.</u>

As in <u>Estate of Allen</u>, the "basis for the allegations of professional negligence against [the treating medical personnel] appears to be that [they] failed to evaluate [the decedent] 'properly' with respect to [his] mental health during [his] intake into Cumberland County Jail, and that [he] (presumably) hanged himself" a short time later. <u>Id.</u>

The Court then ruled that an AOM was necessary because "without an elucidation of what made [the nurse's] evaluation improper, and without clarity as to how that alleged breach of

[her] duty led to the harm complained of, a jury of laypersons would not be able, 'using ordinary understanding and experience, to determine [the nurse's] negligence without the benefit of specialized knowledge or experts.' <u>Chin</u> at 469. An expert, of the type specified by the AOM Statute, is precisely what lay finders of fact would need: to describe the standard of nursing care applicable to the evaluation of Ms. Allen under these circumstances, and that there is a reasonable probability that Garcia breached that standard." <u>Id.</u> at 117-18.

However, the Court carefully delineated and excluded the possibility that the complaint in <u>Estate of Allen</u> alleged that the nurse "failed to evaluate [the decedent] at all, or . . . ignored mention of or reference to suicidal thoughts or ideation, or evaluated only [the decedent's] physical status and not her mental health or well-being[,]" and noted that "[s]uch a claim could, perhaps, fall under the common knowledge exception." <u>Id.</u> at 117. The same distinction will apply here between claims of negligence premised on a healthcare professional's incomplete, inadequate or erroneous mental status examination on the one hand, and failure to make any observations of mental well-being (or perhaps a disregard of clear mention of suicidality) on the other.

Accordingly, and in keeping with the Court's determination in Estate of Allen, the Court will grant CFG's motion to the extent that Plaintiff's claims of negligence against CFG are premised upon the failure of CFG's agents or employees to "properly" evaluate or monitor Mr. Lewis, and deny CFG's motion to the extent that Plaintiff's claims of negligence are premised upon a different theory of liability as described above. It strikes the Court as premature, at this relatively early stage of the case, to state that Plaintiff will not be able to establish a claim that would be subject to the common-knowledge exception with the aid of discovery practice and further development of the factual record, to the extent that such a claim is pled in the SAC, and it is with that in mind that the Court denies in part CFG's motion. Further factual development is needed on the issue of fact whether any mental health examination and observations were made by a healthcare professional.

To summarize, Plaintiff is barred by New Jersey law from asserting that CFG is liable for its employees' deviation from a standard of care in improperly evaluating the decedent's suicidality, due to failure to supply an AOM; Plaintiff's claims against CFG under New Jersey law will not be barred to the extent Plaintiff asserts that CFG's employees failed to perform

<u>any</u> evaluation of the decedent's mental status, so that the record may be further developed in this regard, due to the possibility that such a claim lies within the common knowledge exception to New Jersey's AOM requirement.

## IV.    CONCLUSION

For the reasons discussed herein, Defendant's motion will be granted as to claims against CFG premised upon a failure to screen or monitor the decedent properly. Defendant's motion will be denied as to claims against CFG premised upon other theories of liability, without prejudice to CFG's right to again move for summary judgment on those claims should they prove to be subject to the AOM requirement, as described above. The accompanying Order will be entered.


**March 13, 2018**                    **s/ Jerome B. Simandle**
Date                                  JEROME B. SIMANDLE
                                      U.S. District Judge