UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| THE ESTATE OF ROBERT WAYNE LEWIS, et. al., | |
| Plaintiffs, | Civ. No. 16-3503 (RBK) (AMD) |
| v. | **OPINION** |
| CUMBERLAND COUNTY, et al., | |
| Defendants. | |

**ROBERT B. KUGLER, U.S.D.J.**

This matter comes before the Court by way of Plaintiffs, the Estate of Robert Wayne Lewis by and through its administrator, Tammy Wilson, and Ms. Wilson in her own right's (collectively "Plaintiff") Second Amended Complaint, asserting violations of the Eighth and Fourteenth Amendments, under 42 U.S.C. § 1983, and related state law claims. Presently before the Court are Defendant Balicki and Cumberland County's motion for summary judgment (ECF No. 120), Defendant CFG Health Systems, LLC's ("CFG") motion for summary judgment (ECF No. 118), Plaintiff's motion for summary judgment (ECF No. 119), and the County Defendants' motion to seal (ECF No. 122). The parties filed their respective oppositions (ECF Nos. 128, 129, 130), and all parties, with the exception of Plaintiff, filed replies (ECF Nos. 136, 137). For the reasons set forth below, the Court will grant Defendants' motions for summary judgment, deny as moot Plaintiff's motion for summary judgment, and grant the motion to seal as unopposed.

**I. BACKGROUND**

As the parties are intimately familiar with the facts of this case, and because the Court has already set forth the background of this matter in an earlier Opinion (ECF No. 80), the Court will only state those facts necessary to address the instant motions.

This case arises from the suicide of Robert Lewis, during his pretrial detention at the Cumberland County Jail. On October 27, 2015, Mr. Lewis underwent an intake screening at the jail. Mr. Lewis did not appear despondent, exhibit any bizarre behavior, or appear to be under the influence of drugs during that screening. Mr. Lewis denied having any cuts or open wounds, and the intake officer did not observe any scars or wounds. The intake officer testified that if he had seen any scars or wounds, he would have recorded that information and notified medical staff.

Mr. Lewis then underwent a mental health screening with a CFG intake nurse, where he denied having any thoughts or plans to commit suicide, prior suicide attempts, mental health issues, psychiatric history, or drug issues. Additionally, Mr. Lewis did not appear to be under the influence of alcohol or drugs, and was neat, alert, clean, oriented, and conducted himself appropriately. Approximately two months prior, Mr. Lewis was admitted to the jail, but on that occasion, responded that he had heroin issues and a prior suicide attempt.

On this occasion, Plaintiff alleges that the nurse did not check Mr. Lewis' prior medical history, or his wrists, which had scars from a prior suicide attempt. After intake, officials placed Mr. Lewis in general population without a mental health referral.

On October 29, 2015, officials conducted a cell check at 10:30 p.m. with no issues to report. At approximately 10:56 p.m., staff discovered Mr. Lewis hanging by a sheet in the shower area of that part of the jail. Approximately two minutes later, officers attended to Mr. Lewis and performed CPR until medical staff took over.

Paramedics arrived and transported Mr. Lewis to Inspira Hospital and was pronounced dead in the morning of October 30, 2015. The Cumberland County Prosecutor's Office and the jail completed investigations of the incident.

As discussed in the Court's earlier Opinion, Plaintiff filed a Second Amended Complaint against Defendants raising § 1983 and related state law claims. (ECF No. 26). CFG filed a motion for partial summary judgment with regard to Plaintiff's failure to serve a proper affidavit of merit. (ECF No. 38). The Court granted that motion in part and permitted Plaintiff's negligence claims against CFG to proceed only under the common knowledge exception. (ECF No. 80). At the conclusion of discovery, all parties filed their respective motions for summary judgment.

## II.     STANDARD OF REVIEW

A court should grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Tolan v. Cotton,* 572 U.S. 650, 656–57 (2014). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. *See Cotton,* 572 U.S. at 657. The moving party bears the burden of establishing that no genuine issue of material fact remains. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof," the moving party may discharge its burden "by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

If the moving party meets its threshold burden, the opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *See Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 248 (1986); *see also* Fed. R. Civ. P. 56(c) (setting forth types of evidence that may show that genuine issues of material fact exist). The non-moving party must at least present probative evidence from which the jury might return a verdict in his favor. *Anderson,* 477 U.S. at 257. Where the non-moving party fails to "make a showing sufficient to establish the existence of

an element essential to that party's case, and on which that party will bear the burden of proof at trial," the movant is entitled to summary judgment. *Celotex*, 477 U.S. at 322. "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation,* 912 F.2d 654, 657 (3d Cir. 1990).

Additionally, when plaintiffs move for summary judgment, they bear a heavier burden. *See, e.g.*, *Dunkin Donuts Franchising LLC v. Claudia III, LLC*, No. 14-2293, 2015 WL 4243534, at *1 (E.D. Pa. July 14, 2015). As plaintiffs have the burden of proof at trial, they must produce on a motion for summary judgment, "evidence satisfying each element of [their] claims and show there is 'no genuine dispute as to any material fact that would prevent the court from rendering judgment in the movant's favor.'" *Id.* (quoting *Moore's Federal Practice* § 56.40(1)). Indeed, a plaintiff's evidence "must be so powerful that no reasonable jury would be free to disbelieve it." (*Id.*).

## III. DISCUSSION

### A. Plaintiff's Failures to Comply with Rule 56(c)(1)(A)

Before discussing the merits of these motions, the Court must address the deficiencies within Plaintiff's oppositions, which complicate the task before the Court and act to Plaintiff's great detriment. Under Rule 56(c)(1)(A), any party asserting that a fact is or is not in dispute must support that assertion by "*citing* to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).

When parties fail to follow Rule 56, a court may "(1) give an opportunity to properly support or address the fact; (2) consider the fact undisputed for purposes of the motion; (3) grant summary judgment if the motion and supporting materials—including the facts considered

4

undisputed—show that the movant is entitled to it; or (4) issue any other appropriate order." Fed. R. Civ. P. 56(e).

Local Civil Rule 56.1(a) supplements the federal rule and provides in relevant part:

> The opponent of summary judgment shall furnish, with its opposition papers, a responsive statement of material facts, addressing each paragraph of the movant's statement, indicating agreement or disagreement and, if not agreed, stating each material fact in dispute and *citing to the affidavits and other documents submitted in connection with the motion*; any material fact not disputed shall be deemed undisputed for purposes of the summary judgment motion.

(emphasis added).

Additionally, an "opponent may . . . furnish a supplemental statement of disputed material facts, in separately numbered paragraphs *citing to the affidavits and other documents submitted in connection with the motion,* if necessary to substantiate the factual basis for opposition." *Id.* (emphasis added).

Stated differently, expressing a general disagreement "without identifying the facts disputed *and* without [citing] to evidence in the record that raises an issue of fact regarding that point, is insufficient to survive summary judgment." *Malik v. Hannah*, 799 F. Supp. 2d 355, 358 (D.N.J. 2011) (emphasis added); *see, e.g.*, *Juster Acquisition Co., LLC v. N. Hudson Sewerage Auth.,* No. 12–3427, 2014 WL 268652, at *5 n. 4 (D.N.J. Jan. 23, 2014) (admonishing the defendant for falsely claiming that facts were in dispute, and noting that "any statement that is not explicitly denied with a proper citation to the record in a responsive Rule 56.1 statement is deemed admitted."); *Walters v. Carson*, No. 11–6545, 2013 WL 6734257, at *9 n.11 (D.N.J. Dec.19, 2013).

5

With those principles in mind, Plaintiff's responsive statement of material facts as to the County Defendants only denies or partially denies 13 of the 100[1] paragraphs with *any* citations to the record. (ECF No. 130-1). The rest of Plaintiff's denials, "attempt[] to dispute a fact asserted and supported from the record by Defendants, without supporting [her] position with a citation to the record." *See Soto-Muniz v. Corizon, Inc.*, No. 10-3617, 2015 WL 1034477, at *3 n.3 (D.N.J. Mar. 10, 2015), *aff'd sub nom*. *Soto-Muniz v. Martin*, 665 F. App'x 226 (3d Cir. 2016).

Moreover, in 10 of the 13 remaining paragraphs in "dispute," Plaintiff is "attempting to deny a fact not actually asserted by Defendants" or mischaracterizes the cited evidence. *Id*.; (*See* ECF No. 130-1, at ¶¶ 13, 15, 27, 33, 40, 60, 72, 80, 81, 90 (misnumbered)). In these instances, Plaintiff submits a denial, and then cites to, at best, supplemental related information. Although the Court will consider this supplemental information, such evidence is insufficient to dispute their respective facts in question. *See, e.g.*, *Soto-Muniz*, 2015 WL 1034477, at *3, *Juster*, 2014 WL 268652, at *5 n. 4. Accordingly, the Court will regard the entirety of the County Defendants' statement of facts, with the exception of paragraphs 31, 34, and 69, as undisputed for the purpose of the County Defendants' motion for summary judgment.

Additionally, as Plaintiff did not file a supplemental statement of facts under Local Rule 56.1(a), the Court will only consider the alleged facts in Plaintiff's brief that have proper citations to the record. *See* Fed. R. Civ. P. 56(c)(1)(A), 56(e); *Malik*, 799 F. Supp. 2d at 358. That said, Plaintiff's entire brief contains only four citations to the record, two of which, appear to cite to the entirety of an expert's deposition. (ECF No. 130). Astonishingly, County Defendants emphasized

---

[1] Although County Defendants' statement of facts concludes with paragraph 91, the statement appears to contain 100 paragraphs, due to mis-numbering. For ease of reference, the Court will use the erroneous numbering, as Plaintiff has, and will clarify if the paragraph at issue is misnumbered.

these failures in their reply, and yet Plaintiff appears to have made no effort to remedy these deficiencies.

Similarly, as to CFG's motion, Plaintiff's responsive statement of material facts only denies or partially denies 22 of the 100 paragraphs with *any* citations to the record. (ECF No. 129-1). Once again, the rest of Plaintiff's denials, "attempt[] to dispute a fact asserted and supported from the record by Defendants, without supporting [her] position with a citation to the record." *See Soto-Muniz*, 2015 WL 1034477, at *3 n.3.

Furthermore, in 19 of the 22 remaining paragraphs in "dispute," Plaintiff is "attempting to deny a fact not actually asserted by Defendants," mischaracterizes the cited evidence, or fails to cite evidence with any particularity. *Id.*; (*See* ECF No. 129-1, at ¶¶ 18–29, 79, 80, 83, 85, 86, 89, 99). Critically, in paragraphs 18 through 29, Plaintiff appears to have copied and pasted a conclusory denial, and then cited to the entirety of her statement of facts from her motion for summary judgment.[2] (ECF No. 129-1, ¶¶ 18–29). The Court finds that such denials fail to cite "to particular parts of materials in the record" and fail to comply with Rule 56(c)(1)(A).

Once again, although the Court will consider Plaintiff's supplemental information and will consider the four citations in Plaintiff's opposition (ECF No. 129), the Court will regard the entirety of CFG's statement of facts, with the exception of paragraphs 6, 9, and 11, as undisputed for the purpose of CFG's motion for summary judgment.

---

[2] If Plaintiff were proceeding *pro se*, the Court may have given her "greater leeway" for failing to follow the rules of procedure, but Plaintiff has retained counsel in this matter. *See, e.g.*, *Kyam v. Hudson Cty. Jail*, No. 14-6335, 2019 WL 3214135, at *1 (D.N.J. July 17, 2019) (quoting *Tabron v. Grace*, 6 F.3d 147, 153 n.2 (3d Cir. 1993)).

7

### A. Municipal Liability Under § 1983

Turning then to the merits, Cumberland County argues that summary judgment is appropriate because Plaintiff has failed to support her claim against a local government entity under § 1983.

To succeed on a § 1983 claim, a plaintiff must allege two things: first, a violation of a right under the Constitution, and second, that a "person" acting under color of state law committed the violation. *West v. Atkins,* 487 U.S. 42, 48 (1988); *Piecknick v. Com. of Pa.,* 36 F.3d 1250, 1255–56 (3d. Cir. 1994). The Supreme Court has established that § 1983's definition of "person" includes municipalities and other local government entities. *Monell v. Dep't of Soc. Servs. of N.Y.,* 436 U.S. 658, 690 (1978).

A plaintiff may not, however, hold a local government unit "liable for the unconstitutional acts of its employees on a theory of *respondeat superior*." *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014). To hold such an entity liable under § 1983, plaintiffs must demonstrate that a local government unit adopted a policy or custom and that such policy or custom had been "the moving force" behind the deprivation of their constitutional rights. *See Monell*, 436 U.S. at 694.

Municipal policy generally requires that a local governing body's officers officially adopt and promulgate a "statement, ordinance, regulation, or decision." *Id.* at 690. A municipal custom, although lacking the formal approval of a policy, refers to those official practices which are "so permanent and well settled as to constitute . . . the force of law." *Id.* at 691.

Under certain circumstances, a municipality's failure to properly train its employees and officers can amount to a "custom" under § 1983. *See City of Canton v. Harris*, 489 U.S. 378, 388

(1989). When a plaintiff alleges that a policy "concerns a failure to train or supervise municipal employees, liability under section 1983 requires a showing that the failure amounts to 'deliberate indifference' to the rights of persons with whom those employees will come into contact." *Thomas*, 749 F.3d at 222 (quoting *Carter v. City of Phila.*, 181 F.3d 339, 357 (3d Cir. 1999)). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 409 (1997)).

The "first inquiry in any case alleging municipal liability under § 1983 is . . . whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385. In the present case, Plaintiff alleges that Cumberland County developed policies or customs, such as a failure to train, that caused a deprivation of Mr. Lewis' constitutional rights under the Fourteenth Amendment. (ECF No. 26, at 6).

To state a Fourteenth Amendment[3] claim for deliberate indifference resulting in suicide, a plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility," that the individual would attempt suicide; "(2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic v. Wetzel*, 854 F.3d 209, 223 (3d Cir. 2017). Cumberland County may satisfy its burden for summary

---

[3] From the papers, it appears that Mr. Lewis was a pretrial detainee at the time of the events in question. To the extent Plaintiff seeks to raise corresponding Eighth Amendment deliberate indifference claims in her Complaint, the Court will dismiss those claims as they only apply to inmates who have received their conviction and sentence.

judgment by showing "that there is an absence of evidence to support the nonmoving party's case," and does so here, with proper citations to the record. *See Celotex*, 477 U.S. at 325.

With those principles in mind, Plaintiff's most apparent failure is that she has failed to provide evidence to show that any official committed an underlying Fourteenth Amendment violation. In her brief, Plaintiff alleges that the intake officer who evaluated Mr. Lewis did not receive proper training, failed to conduct a proper screening, and should have known of Mr. Lewis' particular suicide risk. (ECF No. 130, at 6). In particular, Plaintiff alleges that the intake officer should have seen the suicide hesitation scars across Mr. Lewis' wrists. (*Id.*). Further, Plaintiff alleges that the intake officer should have been aware of Plaintiff's previous suicide attempt and drug addiction issues, based on Plaintiff's medical records from two months prior. (*Id.*). Again, however, Plaintiff offers no evidence to support these accusations in the entirety of her opposition.[4]

Consequently, while these allegations provide interesting speculation, counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge v. Twp. of Clinton N.J.*, 984 F.2d 1359, 1370 (3d Cir. 1993). Indeed, in the entirety of Plaintiff's opposition, there are only two citations to the record regarding the intake officer's alleged actions, which are mischaracterizations[5] of the cited evidence. (ECF No. 130-1,

---

[4] Although not required to do so, the Court has reviewed the materials from Plaintiff's motion for summary judgment and finds that it does not change this conclusion. Plaintiff offers no evidence to suggest that the intake officer even saw Mr. Lewis' wrist scars. In any event, as discussed in greater detail below, the failure to "recognize" or appreciate the risk from those scars do not amount to a viable § 1983 claim. *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1025 (3d Cir. 1991); *see infra* Section D.

[5] According to Plaintiff, the intake officer stated that "he would write what the inmate told him" on the intake form "even if it is different from what he observed." (ECF No. 130-1, at 80, 81). In reality, the intake officer stated that if he saw an open or fresh wound, he would report it, and that he did not observe any open wounds on Mr. Lewis during the intake. (ECF No. 119-3, at 35–37). Subject to that qualification, the officer would place down whatever answer he received during intake. (*Id.*).

at ¶¶ 80, 81). Nor does the Court have any obligation "to scour the entire record to find a factual dispute." *E.g.*, *Dawley v. Erie Indemnity Co.*, 100 F. App'x 877, 881 (3d Cir. 2004).

As a result, assuming *arguendo* that Plaintiff has evidence to support the existence of a municipal policy or custom, she fails to raise evidence of an underlying constitutional deprivation. Stated differently, without an underlying violation, Plaintiff cannot demonstrate a "direct causal link" between the policy or custom and Mr. Lewis' death. *See Canton*, 489 U.S. at 385.

That said, Plaintiff also fails to offer any competent evidence regarding Cumberland County's customs and policies. In her brief, Plaintiff suggests that the County failed to learn from prior jail suicides and failed to properly train its employees, but again fails to cite to anything relevant in the record. (ECF No. 130, at 9).

In fact, Plaintiff offers no evidence of prior similar constitutional violations, referring only to *Estate of Watson by & through Lloyd v. Cumberland Cty.*, No. 16-6578, 2018 WL 1064208, at *1 (D.N.J. Feb. 27, 2018), which involved a suicide at the jail nearly *seven months after* Mr. Lewis' death. (ECF No. 130-1 ¶ 67; ECF No. 130, at 9 (offering no citations to the record)).

As to the alleged training failures, Plaintiff only offers evidence[6] regarding a failure to provide CPR training. (ECF No. 130, at 8). Plaintiff, however, fails to explain or offer evidence as to how CPR training impacts this case, *i.e.*, whether poor CPR training contributed to Mr. Lewis' death.

If Plaintiff possesses evidence to rebut any of these conclusions, such evidence is well concealed from this Court. Accordingly, the Court will grant summary judgment on Plaintiff's *Monell* claim against the County.

---

[6] Plaintiff alleges that the County failed to train officers on suicide prevention and on proper intake procedures but cites to the entirety of a defense expert's 445-page deposition. The Court will not scour the record to attempt to create a genuine issue of fact on Plaintiff's behalf.

Moreover, because the New Jersey Legislature modeled the New Jersey Civil Rights Act ("NJCRA") after 42 U.S.C. § 1983 and created a private cause of action for violations of civil rights under either the United States or New Jersey Constitutions, courts interpret NJCRA claims "analogously to § 1983." *Fisher v. Pratt*, No. 19-273, 2019 WL 519569, at *5 (D.N.J. Feb. 11, 2019). Consequently, the Court will grant summary judgment on Plaintiff's corresponding NJCRA claims.

### B. Claims Against Warden Balicki

Next, Defendant Balicki argues that Plaintiff fails to raise evidence in support of a Fourteenth Amendment deliberate indifference claim against him. The Court has reviewed the submissions and finds that Defendant Balicki has met his threshold burden to show "that there is an absence of evidence to support the [Plaintiff]'s case," with proper citations to the record. *See Celotex*, 477 U.S. at 325.

As a general rule, government officials are not liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *Monell,* 436 U.S. at 691 (finding no vicarious liability for a municipal "person" under 42 U.S.C. § 1983); *Robertson v. Sichel,* 127 U.S. 507, 515–16 (1888) ("A public officer or agent is not responsible for the misfeasances or position wrongs, or for the nonfeasances, or negligences, or omissions of duty, of subagents or servants or other persons properly employed by or under him, in discharge of his official duties").

Instead, there are two ways in which supervisors may be liable for the unconstitutional acts of their subordinates. First, liability may attach if a supervisor, "with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused [the] constitutional harm." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d

Cir. 2004) (quoting *Stoneking v. Bradford Area Sch. Dist.*, 882 F.2d 720, 725 (3d Cir. 1989)). Under the second approach, a supervisor "may be personally liable if he participated in violating [] rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in the subordinates' unconstitutional conduct." *Estate of Moore v. Cumberland Cty.*, No. 17-2839, 2018 WL 1203470, at *4 (D.N.J. Mar. 8, 2018).

Here, Plaintiff alleges that Defendant Balicki maintained a policy, practice, or custom, which involved failing to properly train his officers "on Suicide Prevention, CPR, and basic functions such as filling out intake forms" and failing to ensure that they understood existing policies and procedures. (ECF No. 130, at 8).

As discussed above, however, Plaintiff fails to cite to any competent evidence regarding the actions of Defendant Balicki's subordinates. Without evidence of an underlying constitutional violation, Plaintiff cannot establish the requisite causal link to maintain an action for supervisory liability. *See, e.g.*, *Luzerne*, 372 F.3d at 586.

Once again, if Plaintiff possesses evidence to rebut any of these conclusions, she has failed to provide such evidence in accordance with Rule 56(c)(1)(A) and Local Rule 56.1(a). Accordingly, the Court will grant summary judgment as to Plaintiff's § 1983 claims and corresponding NJCRA claims, against Defendant Balicki.

Additionally, because Plaintiff concedes that it is appropriate to do so, the Court will dismiss her claims against the John Doe officers at this time. (ECF No. 130, at 12).

### C. Remaining State Law Claims Against the County Defendants

The County Defendants contend that Plaintiff has failed to raise evidence in support of her negligence claims. The Court has reviewed the submissions and finds that County Defendants

have met their threshold burden to show "that there is an absence of evidence to support" Plaintiff's negligence claims. *See Celotex*, 477 U.S. at 325.

To sustain a negligence claim, Plaintiff must raise evidence to establish four elements: (1) a duty of care, (2) a breach of that duty, (3) proximate causation, and (4) actual damages. *Townsend v. Pierre*, 221 N.J. 36, 51 (2015).

Assuming *arguendo* that County Defendants had a duty to keep Mr. Lewis "safe and secure at the jail" and then breached that duty through various failures to train, Plaintiff fails to present evidence to show that these breaches caused their subordinates' alleged conduct. (ECF No. 130, at 12). As discussed above, although Plaintiff accuses the intake officer of tortious conduct, her counsel did not provide any citations to support these allegations in her opposition. Once again, counsel's unsubstantiated assertions of "fact" do not constitute evidence for the purpose of summary judgment. *E.g.*, *Versarge*, 984 F.2d at 1370.

Accordingly, the Court will grant summary judgment on Plaintiff's negligence claims against the County Defendants. Moreover, as Plaintiff has no remaining standalone claims, the Court will dismiss her survivorship and wrongful death claims against these Defendants, as they are derivative claims. *See, e.g.*, *White v. City of Vineland*, No. 16-8308, 2018 WL 4583509, at *8 (D.N.J. Sept. 24, 2018) ("Claims of 'survivorship' or 'wrongful death' are 'derivative' and therefore must be dismissed when the underlying claims have been dismissed."); *Abramson v. Ritz-Carlton Hotel Co., LLC*, No. 09-3264, 2011 WL 2149454, at *5 (D.N.J. May 31, 2011), *aff'd*, 480 F. App'x 158 (3d Cir. 2012).

**D. Deliberate Indifference Claims against CFG**

Next, CFG argues that Plaintiff fails to raise evidence in support of a Fourteenth Amendment[7] deliberate indifference claim against CFG. The Court has reviewed the submissions and finds that CFG has met its threshold burden to show "that there is an absence of evidence to support the [Plaintiff]'s case," with proper citations to the record. *See Celotex*, 477 U.S. at 325; (ECF No. 118-2).

Under § 1983, a plaintiff cannot hold liable a private corporation that provides healthcare to inmates on a theory of *respondeat superior*. *See Weigher v. Prison Health Servs.*, 402 F. App'x 668, 669–70 (3d Cir. 2010). Instead, pursuant to *Monell*, 436 U.S. at 690–92, a private corporation may be liable for constitutional violations only if it has a custom or policy exhibiting deliberate indifference to a prisoner's serious medical needs. *See Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 583–84 (3d Cir. 2003).

As discussed above, this inquiry ordinarily requires a "pattern of similar constitutional violations . . . to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62. The critical inquiry, again, is "whether there is a direct causal link between a . . . policy or custom and the alleged constitutional deprivation." *Canton,* 489 U.S. at 385.

In the present case, Plaintiff alleges that CFG developed policies or customs, such as a failure to train, that caused a deprivation of Mr. Lewis' rights under the Fourteenth Amendment. To pursue such a claim, Plaintiff must show: "(1) that the individual had a particular vulnerability to suicide, meaning that there was a strong likelihood, rather than a mere possibility," that the

---

[7] As CFG notes, it is unclear from the Second Amended Complaint as to whether Plaintiff seeks to pursue deliberate indifference claims under both § 1983 and the NJCRA. Out of an abundance of caution, the Court will address both types of claims.

individual would attempt suicide; "(2) that the prison official knew or should have known of the individual's particular vulnerability; and (3) that the official acted with reckless or deliberate indifference, meaning something beyond mere negligence, to the individual's particular vulnerability." *Palakovic*, 854 F.3d at 223.

With those principles in mind, Plaintiff fails to offer evidence sufficient to demonstrate an underlying Fourteenth Amendment violation against CFG's intake nurse.[8] Assuming *arguendo*, that Mr. Lewis was particularly vulnerable to suicide, due to his prior suicide attempt and drug withdrawal, Plaintiff fails to demonstrate that the nurse "knew or should have known" of that particular vulnerability. *See id.*

A person "knows" of an individual's particular vulnerability in situations where, for example, "they have had actual knowledge of an obviously serious suicide threat, a history of suicide attempts, or a psychiatric diagnosis identifying suicidal propensities." *Id*. (quoting *Colburn v. Upper Darby Twp.*, 946 F.2d 1017, 1023–24 (3d Cir. 1991)). In the instant case, Plaintiff does not offer evidence of actual knowledge on the part of the intake nurse, *i.e.*, that the nurse actually noticed the scars or actually reviewed Mr. Lewis' prior medical records.

Instead, Plaintiff alleges that CFG staff "missed Mr. Lewis' heroin addiction and previous suicide attempt," and that the nurse "did not check . . . Mr. Lewis' wrists." (ECF No. 119-11, at 9–10; ECF No. 119-1, at ¶¶ 22–23). Consequently, Plaintiff appears to argue that the intake nurse "should have known" of Mr. Lewis' particular vulnerability, in that she should have reviewed the relevant records and checked Mr. Lewis' wrists.

---

[8] Unlike Plaintiff's opposition to the County Defendants' motion, Plaintiff incorporates by reference her motion for summary judgment into her opposition to CFG's motion. To the extent practicable, the Court will consider the additional information.

In this context, however, "should have known . . . is a phrase of art with a meaning distinct from its usual meaning in the context of the law of torts." *Colburn*, 946 F.2d at 1025 (internal quotation marks omitted). The inquiry focuses on the alleged tortfeasor's actual appreciation of the risk, and not a hypothetical scenario. *See id*. "It connotes something more than a negligent failure to appreciate the risk of suicide . . ., though something less than subjective appreciation of that risk." *Id*. The risk of suicide must be "sufficiently apparent that a . . . failure to *appreciate* it evidences an absence of any concern for the welfare of his or her charges." *Id*. (emphasis added). Thus, the risk must be "so obvious that a lay person would easily recognize the necessity for preventative action." *Id*.

The Third Circuit's decision in *Freedman v. City of Allentown*, 853 F.2d 1111 (3d Cir. 1988), is illustrative. In that case, the plaintiffs did not allege that defendants had actual knowledge of Freeman's suicidal tendencies. *Id*. at 1115. Instead, the plaintiffs alleged that defendants "should have known" of those tendencies because Freedman showed the defendants "the large prominent scars . . . on his wrists, inside of his elbows and neck." *Id*. at 1116. The Court was willing to assume "that that a reasonably competent prison official should have known and identified these marks as 'suicide hesitation cuts.'" *Id*.

Nevertheless, the failure to "recognize" or appreciate the risk from those scars "amounted only to negligence," and did not amount to a viable § 1983 claim against those officers. *Colburn*, 946 F.2d at 1025 (citing *Freedman*, 853 F.2d at 1116).

In the present case, Plaintiff explicitly alleges that the intake nurse did not check Mr. Lewis' wrists and did not review his prior medical records. Nor does Plaintiff offer evidence, such as deposition testimony, revealing that the nurse saw the scars or reviewed the records. Further, it

is undisputed that Mr. Lewis denied having any of the suicide potential factors during the mental health intake and appeared alert, neat, and appropriate.

Without more, Plaintiff fails to show that the nurse could have recognized or appreciated Mr. Lewis' suicide risk based on her personal, alleged observations. Consequently, while the failure to review Mr. Lewis' medical history or check his wrists may amount to negligence, it does not amount to a § 1983 claim for deliberate indifference. *See Colburn*, 946 F.2d at 1025.

As a result, without evidence of an underlying constitutional violation, Plaintiff cannot demonstrate a "direct causal link" between CFG's alleged policy or custom and Mr. Lewis' death. *See Canton*, 489 U.S. at 385. Accordingly, the Court will grant summary judgment as to Plaintiff's § 1983 claims and corresponding NJCRA claims, against CFG.

### E. State Law Claims against CFG

CFG contends that Plaintiff fails to raise evidence in support of her remaining negligence claims. In an earlier Opinion, this Court dismissed most of Plaintiff's negligence claims to the extent that they relied on "theories of respondeat superior or agency based on the underlying negligence or professional malpractice of CFG-employed" physicians, registered professional nurses, and other licensed professionals, for Plaintiff's failure to supply a proper affidavit of merit ("AOM"). (ECF No. 80, at 16–17).

The Court did, however, allow Plaintiff's claims to proceed under the "common knowledge exception" of the AOM statute. N.J.S. § 2A:53A-27; (ECF No. 80, at 21–22). Under that exception, AOMs are "not required in common knowledge cases," where "jurors' common knowledge as lay persons is sufficient to enable them, using ordinary understanding and experience, to determine a defendant's negligence without the benefit of specialized knowledge or experts." *Estate of Chin by Chin v. St. Barnabas Med. Ctr.*, 160 N.J. 454, 469 (1999).

To summarize, this Court barred Plaintiff's claims of "negligence premised on a healthcare professional's incomplete, inadequate or erroneous mental status examination" but permitted claims based on "a failure to make *any* observations of mental well-being (or perhaps a disregard of clear mention of suicidality)." (ECF No. 80, at 21–22 (emphasis added)).

Since that Opinion, the parties have completed discovery. The resulting undisputed facts show that CFG's intake nurse conducted a mental health evaluation of Mr. Lewis and his suicide potential factors. (ECF No. 118-2, at ¶¶ 16–30). Plaintiff alleges, in her brief, that the intake nurse "did not take the time to ask these questions," but fails to cite to any evidence in support of that allegation. (ECF No. 129, at 6).

Plaintiff emphasizes that the nurse indicated "no" on the question "has previous suicide attempt (checks wrists & note method)," despite the scars on Mr. Lewis' wrists. (ECF No. 129). From such evidence, alone, the Court cannot reasonably infer that the nurse fabricated the answers to the *entire* mental health evaluation or disregarded a "clear mention of suicidality." (ECF No. 80, at 21–22).

In essence, Plaintiff's arguments and evidence take issue with the nurse's decision-making process at intake, *i.e.*, whether the nurse should have accepted Mr. Lewis' denials and should have checked his wrists. Such a claim falls beyond the common knowledge exception, and would require an "expert, of the type specified by the AOM Statute." (ECF No. 80, at 20 (quoting *Estate of Allen v. Cumberland County*, 262 F. Supp. 3d 112, 117–18 (D.N.J. 2017)). Jurors would need an expert: "to describe the standard of nursing care applicable to the evaluation of [Mr. Lewis] under these circumstances, and that there is a reasonable probability that [the nurse] breached that standard." *Id*.

Accordingly, as Plaintiff fails to raise evidence in support of a common knowledge exception claim, the Court will grant summary judgment as to Plaintiff's remaining negligence claims.  Finally, as Plaintiff has no other standalone claims against CFG, the Court will dismiss her survivorship and wrongful death claims against CFG, as they are derivative claims. *See, e.g.*, *White*, 2018 WL 4583509, at *8; *Abramson*, 2011 WL 2149454, at *5.

## IV.     CONCLUSION

For the foregoing reasons, the Court will grant Defendants' motions for summary judgment, deny as moot[9] Plaintiff's motion for summary judgment, and grant the motion to seal as unopposed.  An appropriate Order follows.

Dated:  December  20,  2019

s/Robert B. Kugler<br>
ROBERT B. KUGLER<br>
United States District Judge

---

[9] Although not necessary to the Court's disposition, because Plaintiff fails to raise evidence sufficient to survive summary judgment, she cannot prove that she is entitled to judgment as a matter of law.  Accordingly, she cannot succeed in her motion for summary judgment.